UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                                        Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS A,
INC., d/b/a "THORIAN HOLDINGS,"

                                        Defendants.

21 Civ. 6995 (PKC)

ORDER APPOINTING
MICHAEL FUQUA AS RECEIVER

WHEREAS plaintiff FCS Advisors, LLC ("Brevet") moved, by Order to Show Cause, for the appointment of a receiver to oversee the defendants, Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively "Theia," or the "Receivership Entities");

WHEREAS Theia and Brevet made evidentiary submissions, and appeared for a hearing on October 20, 2021 in which they agreed that the evidentiary record was complete and closed;

WHEREAS, on October 29, 2021, this Court entered an Opinion and Order (the "October 29 Opinion") (Doc 105.) granting Brevet's motion;

WHEREAS after careful and cautious consideration, the Court finds that it is necessary and appropriate to grant the Receiver a limited period of time to secure control of Theia's assets and plan a way forward without the need to defend claims or proceedings in any other court;

WHEREAS the Court has considered the experience and qualifications of Michael Fuqua and his firm B. Riley Advisory Services and finds Michael Fuqua well-qualified to serve as Receiver;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

-1-

1.      Michael Fuqua is appointed to serve as receiver ("Receiver") for each of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. ("Receivership Entities") and for all assets of, in the possession of, under the control of, or held in the name of the Receivership Entities, with all the powers specified herein transferred to the Receiver, which will supersede the powers set forth in Appendix A of the October 29 Opinion.

2.      The Receiver shall be the agent of this Court in acting as Receiver under this Order and assume full control of the Receivership Entities and any affiliates or subsidiaries of the Receivership Entities, and may remove any officer, independent contractor, employee, or agent of the Receivership Entities from control and/or management of the affairs of the same.

3.      The Receiver may take exclusive custody, control, and possession of all the funds, property, mail, and other assets of, in the possession of, or under the control of the Receivership Entities, wherever situated.  The Receiver shall have full power to sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Receivership Entities, including documents related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Receivership Entities.  The Receiver may determine that certain property or other assets of the Receivership Entities shall be under the Receiver's control, but remain in the possession or custody of the Receivership Entities.  The Receiver may also take all steps necessary to secure the business premises of the Receivership Entities and any and all other premises under the control of the Receivership Entities.

4.      For a period of 120 days, no person or entity, including any creditor or claimant of the Receivership Entities, shall commence or maintain an action, proceeding, lawsuit or

bankruptcy case against the Receivership Entities or impacting the property and assets subject to this Order, including an action, proceeding or lawsuit heretofore commenced, without having first obtained leave of this Court.  Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.

5.	No person or entity, including any creditor or claimant against any of the Receivership Entities, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the taking control, possession, or management of the assets.

6.	The Receiver may seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ("FCC") License Assets, as defined in the parties' Secured Note and Purchase and Security Agreement, as well as seek from the FCC and every other applicable government authority an involuntary transfer of control of such FCC License Assets and to take all steps necessary to effectuate a transfer or sale of the assets, except any transfer of control of such FCC License shall be submitted to the Court for approval.

7.	The Receiver may preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets, in order to prevent any loss, damage or injury to customers or clients (including contacting current and former employees, vendors or strategic partners of the Receivership Entities or authorizing others to do so).  In so doing, the Receiver may prevent the withdrawal or misapplication of funds entrusted to the Receivership Entities.  The Receiver may make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, provided that the Receiver shall apply to the Court for prior

approval of any payment or disbursement (a) to the Receiver or his firm; or (b) that exceeds $300,000.

8.     The Receiver may open one or more bank accounts as designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities and make all payments and disbursements from the receivership estate from such accounts.

9.     The Receiver may initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the value of the receivership assets or to carry out the Receiver's duties pursuant to this Order.  If the Receiver determines that any of the Receivership Entities should undertake a bankruptcy filing, the Receiver is authorized to commence cases under title 11 of the United States Code for such entities, and in such cases the Receiver shall remain in possession, custody, and control of the title 11 estates subject to the rights of any party in interest to challenge such possession, custody, and control under 11 U.S.C. § 543 or to request a determination by the bankruptcy court whether the Receiver should be deemed a debtor in possession.

10.     The Receivership Entities, their officers, directors, managers, members, employees, shareholders, agents, attorneys, and other persons who are in active concert or participation with any of the foregoing persons shall comply with the Court's Order, cooperate with and refrain from interfering with, obstructing or impeding the Receiver, and comply with all lawful directions of the Receiver.

11.     The Receiver may retain professionals ("Retained Personnel") to assist him in carrying out the duties and responsibilities in the Court's Order on terms the Receiver determines

to be reasonable in his discretion. The Receiver and Retained Personnel are entitled to reasonable compensation from the Receivership Entities for the performance of duties pursuant to this Order and for the cost of actual and reasonable out-of-pocket expenses incurred by them for those services authorized by this Order that when rendered were (1) reasonably likely to benefit the receivership estate or (2) necessary to the administration of the estate.

12.     The Receiver shall be compensated in accordance with the "Terms of Engagement for the Theia Group, Inc., et al., Receivership" dated November 1, 2021 and signed by Michael Fuqua as Managing Director of B. Riley Advisory Services (Doc 106-1.) (the "Terms of Engagement"), except that, as it relates to the potential transaction with a specific but unnamed buyer referred to in the letter of Motty Shulman dated November 4, 2021 (Doc 113 ¶ 2.), the Receiver shall earn a 1% success fee on sale proceeds in excess of $275 million or the hourly rates referenced in the Terms of Engagement, whichever is higher. The Receiver and all personnel hired by the Receiver shall be compensated solely out of funds now held by or in the possession or control of or which may in the future be received by the Receivership Entities.

13.     The Receiver may borrow funds on behalf of the receivership estate in an amount up to $5 million, which may be borrowed from (a) Brevet on a first-priority secured basis on terms to be negotiated by the Receiver and Brevet; or (b) from any other source if approved in advance by this Court. To the extent the Receiver believes that additional funds are necessary for the carrying out of his duties he shall make an application for approval by the Court.

14.     The Receiver shall submit a report to this Court and the parties regarding the status of the receivership no later than December 22, 2021 and every 60 days thereafter.

15.     The Receiver may apply to the Court for additional authority on an expedited

basis.  Any party objecting to the relief sought by the Receiver shall respond within 3 business

days unless otherwise ordered by the Court.

16.     This Order shall remain in full force and effect until further order of this Court.

17.     This Court retains jurisdiction of this matter for all purposes.

    SO ORDERED.

Dated: New York, New York
       November 8, 2021

                                   P. Kevin Castel
                          United States District Judge